UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Michigan Interlock, LLC; and Michele
Compton,

      Plaintiffs,

v.                                         Case No. 18-12024

Alcohol Detection Systems, LLC; DEI
Holdings, Inc., d/b/a Directed Electronics
Inc.; Department of State, State of
Michigan; and Ruth Johnson, individually
and in her official capacity as Secretary of
State,                               Sean F. Cox
                                                     United States District Court Judge

      Defendants.
_____/

## OPINION AND ORDER GRANTING SECRETARY OF STATE RUTH JOHNSON'S MOTION TO DISMISS

A distributer of anti-drunk-driving devices sued its manufacturer, the Michigan Department of State, and Michigan Secretary of State Ruth Johnson, in both her official and individual capacities. The Secretary has moved to dismiss all claims, asserting sovereign and qualified immunity and arguing that Plaintiffs lack standing.[1]

For the reasons below, the Court will grant the Secretary's motion.

### BACKGROUND

Plaintiff Michele Compton started Plaintiff Michigan Interlock, LLC, ("MIL") to distribute, install, and service Breath Alcohol Ignition Interlock Devices ("BAIID") in Michigan. Compl. ¶ 1.

---

[1] Plaintiffs stipulated to an order that dismissed the claims against the Department. (ECF No. 18). Thus, Secretary Johnson is the only remaining State Defendant.

1

A BAIID is a "breath alcohol analyzer" that "connects with a motor vehicle's ignition and other control systems" and "prevents a vehicle from starting if the would-be-driver's breath alcohol meets or exceeds .025 grams of alcohol per 210 liters of breath." *Id*. at ¶ 28. After a habitual drunk driver recovers his license, a BAIID must be installed in his car and driver data from the device must be provided to the Michigan Department of State. *Id*. at ¶ 27-28.

The Department enforces the portion of the Michigan Vehicle Code that regulates BAIIDs, and oversees their manufacture, certification, installation, removal, and service. *Id*. at ¶ 27-29. To certify a BAIID, the manufacturer must apply to the Department and submit an affidavit, averring that (1) the BAIID meets national standards, (2) the BAIID will periodically take samples within 15 minutes of the driver starting the car, and (3) the manufacturer will comply with the Department's reporting requirements. *Id*. at ¶ 30. By law, the Department maintains a list of approved BAIID manufacturers. *Id*. at ¶ 31; M.C.L.A. § 257.625k. If a manufacturer is removed from this list, its BAIIDs can no longer be used in Michigan. *Id.*; M.C.L.A. 257.625q.

On February 18, 2006, MIL entered into an exclusive distributer agreement with Defendant Alcohol Detection Systems, LLC, ("ADS") a Maryland corporation that manufactures BAIIDs. *Id*. at ¶ 2. Thereafter, the Department certified ADS's BAIIDs and listed MIL's information on the list of approved manufacturers as ADS's distributer. *Id*. at 32-33. Over the years, MIL purchased, leased, distributed, installed, and serviced thousands of BAIIDs manufactured by ADS. *Id*. at ¶ 32, 36. "By almost any metric, the exclusive Distributer Agreement and the relationship with MIL was a major success for ADS." *Id*. at ¶ 43. Similarly, MIL's annual gross income eventually exceeded $2 million. *Id*. at ¶ 45.

On March 8, 2016, the Michigan Legislature amended the Vehicle Code to require that all

BAIIDs be equipped with cameras capable of recording a digital image of the individual providing the sample. *Id*. at ¶ 54. The amendment also empowered the Department to immediately suspend a manufacturer, and revoke that manufacturer's device from the approved list, if the manufacturer violated any section of M.C.L.A. § 257.625q(10). (e.g. repeated failure to submit reports in a timely matter, repeated failure to report violations, providing a person with a bypass code, etc.). A manufacturer must immediately comply with a summary suspension order, but may apply for a hearing within thirty days. M.C.L.A. § 257.625q(11). Notably, non-manufacturers (like MIL) do not have a statutory right to a hearing, even if they, in fact, own the de-certified BAIDD . Compl. ¶ 57.

As soon as this amendment took effect, ADS informed MIL that it would not replace or modify previously purchased BAIIDs to include the necessary cameras. *Id*. at ¶ 58. To remain in business, MIL and Compton borrowed $1.6 million to purchase about 1,500 camera-equipped BAIIDs from ADS. *Id*. at ¶ 59. For the next few years, these new units "failed to function properly within the Department's requirements." *Id*. at ¶ 61-66. MIL informed ADS about the problems, but ADS failed to correct them.

On January 16, 2018, Plaintiffs learned that Defendant Directed Electronics, Inc., had purchased ADS. (ADS and Directed are collectively referred to as "the Corporate Defendants"). Plaintiffs allege that Directed "plotted" to enter the BAIID market so that it could leverage its existing distribution structure in Michigan, in direct violation of MIL's exclusive distributer agreement. *Id*. at ¶ 68.

On March 7, 2018, the Department lodged a Summary Suspension Complaint and Order that immediately decertified BAIIDs manufactured by the Corporate Defendants, including those that

MIL had already purchased and installed. *Id*. at ¶ 79. The Department never provided MIL with the opportunity to contest the order or an opportunity to be heard. *Id*. at ¶ 82. The next day, the Department issued a press release that instructed customers "to contact [MIL] to have [their BAIID] removed - for free - and have a new device installed by one of the five approved manufacturers." *Id*. at ¶ 86. On March 16, 2018, the Corporate Defendants sent a letter to all of MIL's customers, instructing them to call "an ADS representative" and providing MIL's phone number. *Id*. at ¶ 92.

The Corporate Defendants refused to reimburse MIL for any of the de-installation costs it incurred in the aftermath of the Suspension Order. *Id*. at ¶ 94.

From March 15, 2018 to March 30, 2018, the State Defendants and the Corporate Defendants met to discuss the Suspension Order. *Id.* at ¶ 98. MIL was not notified of these discussions or given the opportunity to represent its own interests. *Id*. At one of these meetings, the Defendants agreed to a modified order that re-certified the BAIIDs. *Id*. On March 30, 2018, the State Defendants lifted the Suspension Order and approved the modified order. *Id*.

The next day, the Corporate Defendants informed Plaintiffs that the State Defendants "no longer wanted MIL on the Department's list of approved vendors." *Id*. at ¶ 102. The Department removed MIL's information from the list and designated ADS as both a manufacturer and distributor. *Id*. at 103.

At this point, Plaintiffs allege that "the Corporate Defendants [entered] Plaintiffs' property without permission, [accessed] their computers, phones, files, and systems without permission, and otherwise [conducted] business with Plaintiffs' BAIIDs - without permission." *Id*. at ¶ 106.

On August 13, 2018, Plaintiffs filed their amended complaint in this case, naming the Department and Secretary Johnson, in her official and individual capacity. Against the State

4

Defendants, Plaintiffs allege 42 U.S.C. § 1983 claims for (1) violation of procedural due process, (2) violation of substantive due process, and (3) unlawful taking. Plaintiffs also seek a declaration that M.C.L.A. § 257.625q is unconstitutionally vague.

On August 28, 2018, Secretary Johnson moved to dismiss all claims. She argues that she is entitled to sovereign immunity in her official capacity and qualified immunity in her individual capacity. She also argues that Plaintiffs lack standing. In response, Plaintiffs argue that sovereign immunity does not apply because they are seeking prospective injunctive relief and that they have standing to bring these claims.

## ANALYSIS

### I. Standard of Review

A motion to dismiss tests the legal sufficiency of the plaintiff's complaint. To survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

Although the Court must accept all well-pleaded factual allegations as true for purposes of a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Thus, to avoid dismissal, "a complaint must contain sufficient factual matter," accepted as true, to state a claim for relief that is plausible on its face. *Id.* at 678.

## II. Claims Brought Against Secretary Johnson in her Official Capacity

### A. Sovereign Immunity

As an initial matter, the Court will determine what relief Plaintiff can seek from the Secretary in her official capacity. The Eleventh Amendment bars civil rights actions against a state, its agencies, and its departments unless the state has waived its immunity and consented to suit, or Congress has abrogated that immunity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). The Eleventh Amendment also immunizes state officials who are sued in their official capacities. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009)).

Eleventh Amendment immunity applies "regardless of the nature of the relief sought," *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984), and "bars all suits, whether for injunctive, declaratory, or monetary relief, against the state and its departments by citizens of another state, foreigners, or its own citizens." *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993) (internal citations omitted); *see also McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012) (citing *Thiokol*). The Eleventh Amendment, however, does not preclude suits against state defendants for prospective injunctive relief. *See Carten v. Kent State Univ.*, 281 F.3d 391, 397 (6th Cir. 2002) (citing *Ex parte Young*, 209 U.S. 123 (1908)) (the "*Ex parte Young* exception"); *McCormick*, 693 F.3d at 662 (citing *McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000)).

The State of Michigan has not consented to be sued for civil rights actions in federal court, *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986), and Congress did not abrogate Eleventh Amendment immunity when it enacted § 1983. *Quern v. Jordan*, 440 U.S. 332, 341 (1979). Thus,

sovereign immunity bars all of Plaintiffs' claims against Secretary Johnson, in her official capacity, except those that seek prospective injunctive relief.

### B. Continuing Constitutional Violations

"The test for determining whether the *Ex parte Young* exception applies is a 'straightforward' one." *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 474 (6th Cir. 2008). The Court considers "whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535, 645 (2002). The focus of the inquiry remains on the allegations only; it "does not include an analysis of the merits of the claim." *Id.* at 646.

The Court will address each of Plaintiffs' claims to determine whether they have alleged a constitutional violation that is ongoing and, therefore, appropriate for prospective injunctive relief.

#### i. Count XIV: Procedural Due Process

Plaintiffs allege that they had "Constitutionally protected use, property, and liberty interests in the their BAIIDs, the data produced by and housed on the their BAIIDs, their certification and enlistment as an approved BAIID vendor..., the profits generated for the use of their BAIDD, and the contracts concerning those BAIIDs." Compl. at ¶ 244. The State allegedly denied these rights by lodging a Summary Suspension Order and removing them from the approved manufacturers list, without a pre- or post-deprivation hearing. *Id.* at ¶ 246-247. Plaintiffs allege that "[u]nless restrained by this Court, the State Defendants will continue to wield their power and deprive persons and BAIID service providers of the rights, privileges or immunities secured or protected by the Constitution...and continue to cause irreparable harm." *Id.* at ¶ 250.

Notably, Plaintiffs do not allege that they face a threat of current or future procedural due

7

process violations. Rather, Plaintiffs state that they were "*deprived* of their rights under the Fourteenth Amendment...and thereby suffer and will continue to suffer substantial *damages*." *Id*. at ¶ 251 (emphasis added). Thus, Plaintiffs allege they are still feeling the effects of a past violation—not that a current violation is harming them or that a future violation will harm them.

Moreover, Plaintiff's complaint shows that they are not truly seeking prospective injunctive relief for this claim. Plaintiffs allege that "[f]ederal due process principles required the State Defendants to provide a 'clear and certain remedy'" for their deprivation of rights, and that this obligation may be satisfied by "refunding [the money Plaintiffs paid for de-installation costs] and orchestrating the return of their equipment." *Id*. at ¶ 246. To the extent that Plaintiffs are implying that they have a claim for money damages, any such claim is barred by sovereign immunity. Further, an injunction requiring the Secretary to "orchestrate" the return of equipment would be retrospective (i.e. addressing a past harm), not prospective.

For these reasons, the Court concludes that Plaintiffs' procedural due process claim fails to seek prospective injunctive relief and is barred by sovereign immunity.

### ii. Count XV: Substantive Due Process

Plaintiffs allege that "Substantive Due Process requires that government action that deprives individuals of life, liberty, or property be reasonably related to the police power, that is, the health, safety, welfare, or morals of the community, and that executive action not be abusive, or shocking to the conscience." *Id*. at ¶ 254 (internal citations omitted). Plaintiffs further allege that the Michigan Legislature created a liberty interest when it constrained the Secretary's discretion in M.C.L. § 257.625q, and that Plaintiffs had a property interest in their BAIIDS, their data, their spot on the approved list, and their contracts. *Id*. at ¶ 257. Plaintiffs claim that the Secretary deprived

8

Plaintiffs' liberty and property interests, and this deprivation was not reasonably related to any exercise of the police power and shocked the conscience. *Id*. at ¶ 264. Because of this, Plaintiffs claim they "have suffered and will continue to suffer substantial injuries." *Id*.

Here, Plaintiffs appeared to have alleged one ongoing constitutional violation: that they have a property interest in being on the list of approved BAIID manufacturers and that the Secretary arbitrarily removed them. If this is true, the violation is continuing for as long as they are left off the list. This logic also applies to the liberty interest claim; if Plaintiffs had a liberty interest in being in the BAIID business, the violation is continuing for as long as the Secretary prevents them from operating. Thus, the Court concludes that Plaintiffs' substantive due process claims fall within the *Ex parte Young* exception because prospective injunctive relief could be appropriate.

### iii. Count XVI: Unlawful Taking

Plaintiffs allege that they have property rights in their BAIIDs, data, certification, spot on the approved list, and contracts. *Id*. at ¶ 267. Plaintiffs allege that the State deprived them of these property interests without just compensation, and is using their property for the public's benefit. *Id*. at ¶ 270. Moreover, Plaintiffs allege that the State Defendants "have deprived Plaintiff of any and all economically beneficial use of their property" without just compensation. *Id*. at ¶ 268-270.

The Court concludes that Plaintiffs have alleged an ongoing Constitutional violation only as to their spot on the approved list. If Plaintiffs have a property interest in being on the approved vendor list, and the Secretary has deprived them of being on the list without just compensation, that constitutional violation would be continuous. To this extent, Plaintiffs have alleged a continuing constitutional violation where prospective injunctive relief could be appropriate.

### iv. Count XVII: Declaratory Judgement that M.C.L. § 257.625q is Unconstitutionally Vague

Plaintiffs allege that M.C.L. § 257.625q contains provisions that are invalid under the vagueness doctrine, and seeks "declaratory relief" to that effect. Because this claim is not seeking prospective injunctive relief, it is barred by sovereign immunity.

### C. Standing

In addition to asserting sovereign immunity, Secretary Johnson also argues that Plaintiffs do not have standing to bring their constitutional claims. Because the Court concludes that Counts XIV and XVII are barred by sovereign immunity, it will not consider whether Plaintiffs have standing for those claims.

"To establish Article III standing, the plaintiff must allege that: (1) he has suffered an injury-in-fact that is both '(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical'; (2) the injury if fairly traceable to the defendant's conduct; and (3) it is likely that the injury will be redressed by a favorable decision." *Binno v. American Bar Assoc.*, 826 F.3d 338, 344 (6th Cir. 2016)

#### i. Count XV: Substantive Due Process

Plaintiffs allege that they have property interests in their BAIIDs, the BAIIDs' data, their certification and status as an approved vendor, and the profits generated by the use of their BAIID. Compl. at ¶ 257. Plaintiffs further allege that they have a liberty interest in their right to pursue a trade or profession. *Id.* at ¶ 255. By removing Plaintiffs from its approved list, Plaintiffs allege that the Secretary deprived them of these interests. *Id.* at ¶ 258-259.

Here, Plaintiffs have not alleged a concrete, particularized injury. Although Plaintiffs claim that they have been deprived of property and liberty interests, this is a legal conclusion couched as

a factual allegation, *Twombly*, 550 U.S. at 555., and the amended complaint does not provide any factual basis for the Court to conclude that either of these interests actually exist. The two statutes that Plaintiffs point to as creating these interests apply only to BAIID "manufacturers." *See* M.C.L.A. § 257.625k ("the department shall provide a list of all *manufacturers* of approved certified devices to each person who is approved to be issued a restricted license..."); M.C.L.A. § 257.625q(10) ("The administrator may order a summary suspension or revocation of the certification of a *manufacturer* and its device from the list of approved certified BAIIDs..."). Because Plaintiffs do not allege that they are BAIID manufacturers, the Court does not see how these statutes can create liberty or property interests for Plaintiffs that could have been harmed by Secretary Johnson's actions. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (stating that standing requires "an invasion of a legally protected interest.").

Moreover, the Plaintiffs' allegations do not establish that the harm is fairly traceable to Secretary Johnson's actions or redressable by her. The Secretary represents that she "cannot dictate who device manufacturers utilize as local installers for the devices. The device manufacturers provide the State Defendants with the contact information to be displayed on the Secretary of State's website. Determining who will install the devices is a contractual matter between the manufacturer and local distributer." (ECF No. 13, PageID 446). This representation aligns with the text of the statute. *See* M.C.L.A. § 257.625k (requiring the Department to list approved BAIID manufacturers, not distributers or installers). Thus, the alleged harm appears to have been caused, and can be redressed, by the Corporate Defendants—not the Secretary. *See Lujan*, 504 U.S. at 560 (for standing purposes, the injury cannot be "the result of the independent action of some third party...").

### ii. Count XVI: Unlawful Taking

11

Plaintiffs allege that they have property interests in their BAIIDs, the BAIIDs' data, their certification and status as an approved vendor, the contracts governing the BAIIDs, the financing documents controlling their BAIIDs, and other monetary assets. Compl. at ¶ 267. Plaintiffs allege that this property "was taken from them due to the State Defendants' acts and/or omissions, and placed into the hands of the Corporate Defendant's without Plaintiffs' permissions, authorization, or approval, and/or the State Defendants have deprived Plaintiffs of any and all economically beneficial use of their property." *Id*. at ¶ 268. Plaintiffs allege that the Secretary took their property "for public use." *Id*. at ¶ 269.

As the Court previously noted, the only alleged deprivation that could be remedied by prospective injunctive relief is Plaintiffs' omission from the approved list. But, this argument fails for the same reasons that Plaintiffs' substantive due process claim fails: there are no factual allegations to establish that Plaintiffs actually had this property interest, that the Secretary actually caused the harm, or that the Secretary can redress the harm. *See* discussion *supra* Section II.C.i

### D. Conclusion for Official Capacity Claims

The Court concludes that Plaintiffs' procedural due process and declaratory judgment claims against Secretary Johnson, in her official capacity, are barred by sovereign immunity. Further, the Court concludes that, even though Plaintiff's substantive due process and unlawful taking claims are within the *Ex parte Young* exception, Plaintiffs lack standing.

### III. Claims Brought Against Secretary Johnson in her Individual Capacity

Secretary Johnson argues that she is entitled to qualified immunity for the claims that Plaintiff has brought against her in her individual capacity.

Qualified immunity "shield[s]" public officials from money-damages liability if 'their

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Public officials are eligible for qualified immunity if (1) they did not violate any constitutional guarantees or (2) the guarantee, even if violated, was not "clearly established" at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009). Both inquiries are "objective," as they turn on what the law is today and whether it was clearly established at the time of the challenged action. *Harlow*, 457 U.S. at 818–19, 102 S.Ct. 2727.

In *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437 (6th Cir. 2016), the Sixth Circuit explained why qualified immunity usually applies when an official is sued for enforcing a validly enacted law:

> When public officials implement validly enacted state laws that no court has invalidated, their conduct typically satisfies the core inquiry—the "objective reasonableness of an official's conduct"—that the immunity doctrine was designed to test. *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727. State legislators swear to uphold the state and federal constitutions, see U.S. Const. art. VI, cl. 3; Ohio Const. art. XV, § 7, and a presumption of constitutionality accompanies their enactments, *see Heller v. Doe*, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)—a presumption on which executive officials generally may depend in enforcing the legislature's handiwork.
> ...
> Caselaw validates this conclusion. The Supreme Court tells us that public officials should generally receive qualified immunity when enforcing properly enacted laws. *See Michigan v. DeFillippo*, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). In *DeFillippo*, the Court addressed what came to be known as the Fourth Amendment's good-faith exception, which requires the same "objective reasonableness" showing that the qualified-immunity inquiry demands. *See Groh v. Ramirez*, 540 U.S. 551, 565 n. 8, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004); *United States v. Leon*, 468 U.S. 897, 911–12, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The Court noted that "[t]he enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and fragrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *DeFillippo*, 443 U.S. at 38, 99 S.Ct. 2627. The Court was more explicit in *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). "A policeman's lot is not so unhappy," it reasoned, "that he must choose between

13

being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does." *Id*. at 555, 87 S.Ct. 1213.

*Citizens,* 810 F.3d at 441.

Notably, the Sixth Circuit recognized that "the Supreme Court has never denied qualified immunity to a public officer who enforced a properly enacted statute that no court had invalidated." *Id.* (collecting Supreme Court cases, Sixth Circuit cases, and other federal appellate court cases where a public official who enforced a validly enacted law was shielded by qualified immunity).

Here, the Michigan Legislature validly enacted a law that allowed the Secretary to lodge a Summary Order that immediately de-certifies a manufacturer's device. This statute imposed no procedural requirements as to non-manufacturers, such as MIL, but the Secretary is entitled to presume that the law is constitutional. Further, MIL itself was not subject to the order, so it was not clear that MIL's rights could be affected by the Secretary's actions. Thus, at the time of the Order, the Secretary did not know that her implementation of the statute could harm MIL. In other words, Secretary Johnson is entitled to qualified immunity in her personal capacity because, at the time of the Order, it was not clearly established that she might violate Plaintiffs' constitutional rights.

## CONCLUSION

For the reasons above, the Court GRANTS Secretary Johnson's motion to dismiss.

IT IS SO ORDERED.

                                                           s/Sean F. Cox
                                                           Sean F. Cox
                                                           United States District Judge

Dated: December 27, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on

December 27, 2018, by electronic and/or ordinary mail.

                                        s/Jennifer McCoy
                                        Case Manager